ACCEPTED
01-15-00373-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/10/2015 5:13:17 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00373-CV

IN THE COURT OF APPEALS FOR
THE FIRST DISTRICT OF TEXAS
AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/10/2015 5:13:17 PM
CHRISTOPHER A. PRINE
Clerk

MARY RUST
*Appellant,*

v.

BANK OF AMERICA, N.A.
*Appellee.*

On appeal from the County Court at Law No. 1 of Travis County, Texas
Trial court cause no. C-1-CV-14-010108
Hon. Todd T. Wong, Presiding

# BRIEF FOR THE APPELLEE

Mark D. Hopkins
Texas State Bar No. 00793975
Shelley L. Hopkins
Texas State Bar No. 24036497
Hopkins Law, PLLC
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinslawtexas.com

ATTORNEYS FOR APPELLEE

August 10, 2015

1

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1), Appellee certifies that the following is a complete list of all parties and counsel:

1.  **Appellee:**                    **Bank of America, N.A.**

    Represented at trial
    and on appeal by:                Mark D. Hopkins
                                     Texas State Bar No. 00793975
                                     Shelley L. Hopkins
                                     Texas State Bar No. 24036497
                                     Hopkins Law, PLLC
                                     12117 Bee Caves Rd., Suite 260
                                     Austin, Texas 78738
                                     (512) 600-4320 – Telephone
                                     (512) 600-4326 – Facsimile

2.  **Appellant:**                   **Mary Rust**

    Represented at trial
    and on appeal by:                David A. Rogers
                                     Texas State Bar No. 2401089
                                     Law Office of David Rodgers
                                     1201 Spyglass Drive, Suite 100
                                     Austin Texas 78746
                                     (512) 923-1836 – Telephone
                                     (512) 777-5988 – Facsimile
                                     Firm@DARogersLaw.com

3.  **Trial Judge:**                 **Hon. Todd T. Wong**
                                     County Court at Law No. 1
                                     Travis County, Texas

# TABLE OF CONTENTS

BRIEF FOR THE APPELLEE ......................................................................... 1

IDENTITY OF PARTIES AND COUNSEL ...................................................... 2

TABLE OF CONTENTS .................................................................................. 3

INDEX OF AUTHORITIES ............................................................................. 4

STATEMENT OF THE CASE ......................................................................... 7

ISSUES PRESENTED ..................................................................................... 8

    1. Did the Trial Court appropriately enter judgment for Appellee on its forcible detainer suit based upon the documents admitted into evidence establishing Appellee's superior right to immediate possession of the Property, such evidence being: (a) a deed of trust with tenancy at sufferance clause, (b) a substitute trustee's deed, and (c) a notice to vacate? ......................................................................... 8

    2. Did the trial court err in awarding Appellee Attorney's Fees pursuant to Texas Property Code 24.006(b)? ................................................ 8

STATEMENT OF FACTS ................................................................................ 9

SUMMARY OF THE ARGUMENT ................................................................ 10

ARGUMENTS & AUTHORITIES ................................................................... 11

PRAYER ........................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................ 21

CERTIFICATE OF COMPLIANCE ............................................................... 22

APPENDIX ....................................................................................................... 23

# INDEX OF AUTHORITIES

**CASES**                                                         **PAGE(S)**

*Bierwirth v. Fed. Nat. Mortg. Ass'n.,*
2014 WL 902541 (Tex. App. – Austin 2014)(mem. op.) ................................... 18

*Bittinger v. Wells Fargo, N.A.,*
2011 WL 4793828 (Tex. App- Houston [14th Dist] 2011) ................................ 14

*Black v. Washington Mut. Bank,*
318 S.W.3d 414 (Tex. App.–Houston [1st Dist.] 2010, pet. dism'd w.o.j.).. 12, 13

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex.2005) ..................................................................... 11

*Clarkson v. Deutsche Bank Nat'l Trsut Co.,*
331 S.W.3d 837 (Tex. App.—Amarillo 2011, no pet) ................................... 17

*Crumpton v. Stevens,*
936 S.W.2d 473 (Tex. App.–Fort Worth 1996, no writ) ................................. 13

*Deubler v. Bank of New York Mellon,*
2011 WL 1331540 (Tex. App.--Fort Worth 2011, no pet.) (mem.op.) ............... 16

*Fandy v. Lee,*
880 S.W.2d 164 (Tex. App.–El Paso 1994, no writ) ..................................... 12

Fleming v. Fannie Mae,
2010 WL 4812983 (Tex. App.—Waco 2010, no pet. h.) (memo. op.) ............... 15

*Haith v. Drake,*
596 S.W.2d 194 (Tex. App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.) ........... 13

*Hartzog v. Seeger Coal Co.,*
163 S.W. 1055 (Tex. Civ. App.–Dallas 1914, no writ) ................................... 13

*Home Sav. Ass'n v. Ramirez,*
    600 S.W.2d 911 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e)............ 13

*Hong Kong Dev., Inc. v. Nguyen,*
    229 S.W.3d 415 (Tex. App.–Houston [1st Dist.] 2007, no pet.)........................ 13

*Hornsby v. Secretary of Veterans Affairs,*
    2012 WL 3525420 (Tex.App.-Dallas Aug. 16, 2012, no pet.) (mem.op.).... 15, 17

*Intercontinental Grp. Partnership v. KB Home Lone Star L.P.,*
    295 S.W.3d 650 (Tex. 2009) ...................................................................... 18

*Jaimes v. Federal Nat. Mortg. Ass'n,*
    2013 WL 7809751 (Tex. App. – Austin 2013(mem. op.) ............................... 18

*Kaldis v. Aurora Loan Servs.,*
    2010 WL 2545614 (Tex.App.-Houston [1st Dist.] June 24, 2010, pet. dism'd
    w.o.j.) (mem.op.) ........................................................................................ 16

*Kindred v. Con/Chem, Inc.,*
    650 S.W.2d 61 (Tex.1983) ......................................................................... 11

*Martinez v. Beasley,*
    572 S.W.2d 83 (Tex. Civ. App.–Corpus Christi 1979, no writ)...................... 13

Middleton v. Crestar Mortgage Corp.,
    2000 WL 298694 (Tex. App.—Austin 2000, no pet.) (mem.op.)...................... 15

*Mitchell v. Citifinancial Mortg. Co.,*
    192 S.W.3d 882 (Tex. App.—Dallas 2006, no pet.) ......................................... 18

*Powelson v. U.S. Bank Nat'l Ass'n,*
    125 S.W.3d 810 (Tex. App.—Dallas 2004, no pet.) ......................................... 18

*Reardean v. Federal Home Loan Mortg. Corp.,*
    2013 WL 4487523 (Tex. Civ. App. – Austin, 2013)......................................... 15

*Rice v. Pinney,*
    51 S.W.3d 705 (Tex. App.—Dallas 2001, no pet.) ........................... 12, 13, 14, 16

*Rodriguez v. Citimortgage,*
   2011 WL 182122 (Tex. App.—Austin 2011, no pet.)(memo. op.).........13, 15, 18

*Rust v. Bank of America, N.A.,*
   573 Fed. Appx. 343 (5th Cir. 2015) ................................................7, 15

*Scott v. Hewitt,*
   90 S.W.2d 816 (Tex. 1936) ..............................................................12, 13

*Smith v. KNC Optical, Inc.,*
   296 S.W.3d 807 (Tex. App.--Dallas 2009, no pet)..............................11

*Stephens v. Federal Home Loan Mortg. Corp.,*
   2011 WL 1532384 (Tex.App.-Fort Worth Apr. 21, 2011, no pet.).....................15

**STATUTES**                                                                                                   **PAGE(S)**

**Statutes**

TEX. PROP. CODE §24.002(a)(2).........................................................................16

Tex. Prop. Code §24.006(a) ...............................................................................19

Tex. Prop. Code §24.006(b)...................................................................8, 18, 19

TEX. R. CIV. P. 746..............................................................................................12, 15

6

## STATEMENT OF THE CASE

This is an appeal by Mary G. Rust ("Appellant" or "Rust") from a final judgment [CR 376] entered by the County Court at Law Number One in Travis County, Texas, granting Bank of America, N.A. ("Bank of America" or "Appellee") immediate possession of property located at 2623 Alcott Lane, Unit A, Austin, Texas 78748 (the "Property"). Bank of America purchased the Property at a foreclosure sale on September 4, 2012, and Appellant refused to vacate the Property after Bank of America's demand. Appellant Rust separately challenged the underlying foreclosure sale of the Property with a district court lawsuit, the result of which was an opinion from the United States Court of Appeals for the Fifth Circuit affirming the validity of the foreclosure sale. *See,* Appendix Ex. A, *Rust v. Bank of America, N.A.,* 573 Fed. Appx. 343 (5th Cir. 2015).

# ISSUES PRESENTED

1.  Did the Trial Court appropriately enter judgment for Appellee on its forcible detainer suit based upon the documents admitted into evidence establishing Appellee's superior right to immediate possession of the Property, such evidence being: (a) a deed of trust with tenancy at sufferance clause, (b) a substitute trustee's deed, and (c) a notice to vacate?

2.  Did the trial court err in awarding Appellee Attorney's Fees pursuant to Texas Property Code 24.006(b)?

## STATEMENT OF FACTS

After Appellant Mary Rust ("Appellant" or "Rust") defaulted on her mortgage, Bank of America, N.A. ("BANA") purchased the real property and improvements commonly known as 2623 Alcott Lane, Texas 78748 (hereafter, "Property") at a non-judicial foreclosure sale on September 4, 2012. [CR 346-348] [Appendix Ex. B]. The Deed of Trust signed by Appellant stated that if the Property were sold via a non-judicial foreclosure, that she would "immediately surrender possession of the Property to the purchaser at that sale." [CR 336-344] [Appendix Ex. C]. The Deed of Trust also states that if possession is not surrendered, "Borrower [Rust] or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding." [CR 341-342].

BANA sent Appellant written notice to vacate the Property via regular and certified mail on August 15, 2012. [CR 349-355] [Appendix Ex. D]. BANA also sent a notice to vacate to the "Occupant(s) and/or Tenant(s)" via regular mail on the same date. *Id.*

After Appellant refused to vacate, BANA obtained a Forcible Entry and Detainer Judgment in its favor from the Justice Court, Precinct 3, Place 1, of Travis County, Texas. [CR 13]. Appellant appealed the judgment to the County Court at Law No. 1. [CR 10].

9

The County Court held a *de novo* hearing on March 5, 2015. [RR vol. 2] and during that hearing the Court admitted into evidence the Substitute Trustee's Deed showing BANA's purchase of the Property at the foreclosure sale and the Deed of Trust showing Appellant's tenant at sufferance status. *Id.* After those two exhibits were admitted the County Court admitted the business record affidavit of Vaughan over Appellant's hearsay objection. *Id.* Subsequently, the County Court awarded immediate possession of the Property to Fannie Mae. [CR 376] [Appendix Ex. E]. This appeal followed.

## SUMMARY OF THE ARGUMENT

**Evidence Supports Judgment in Favor of Appellee.** The Trial Court's judgment in favor of Appellee is supported by sufficient evidence showing Appellee's superior right to immediate possession of the Property. Appellee introduced documentary evidence showing that it had purchased the Property at a foreclosure sale, that the Deed of Trust to the Property made Appellant a tenant at sufferance after the foreclosure, that Appellee demanded that Appellant vacate, and that Appellant refused to do so. Appellant produced no evidence that would suggest that the Trial Court's decision is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.

10

**Attorneys Fees on Appeal.** Appellee proved-up through competent testimony its attorney's fees. The court did not commit error in awarding those fees.

## ARGUMENTS & AUTHORITIES

### I.     Standard of Review

Rust, on appeal, attacks the sufficiency of the evidence supporting the Trial Court's award of possession of the Property to Bank of America. When, as here, a party challenges the evidence supporting a finding upon which she did not bear the burden of proof, the appellate court will sustain the challenge if the evidence offered to support the finding is no more than a scintilla. *Smith v. KNC Optical, Inc.,* 296 S.W.3d 807, 811 (Tex. App.--Dallas 2009, no pet.). Evidence is no more than a scintilla if it is so weak that it does no more than create a surmise or suspicion of its existence. *Id.* (*citing Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)). In conducting its review, the appellate court considers the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *Id.* (*citing City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005)). In short, Rust asserts that she offered evidence through an offer of proof that challenged the validity of the foreclosure sale through which Bank of America obtained title. See, *Appellant's Brief* at 5-6. However, the law is prohibits Appellant from attacking Bank of America's title in this way. Rather, the only

issue in a forcible detainer case is the party's superior right to immediate possession of the property. Continuing, Appellant did file a separate district court lawsuit challenging the foreclosure, and judgment was granted against her therein.

## II. Nature of a Forcible Detainer Action

The forcible detainer action was created to provide a speedy, simple and inexpensive means for resolving the question of the right to immediate possession of real property without resorting to an action upon the title. *Scott v. Hewitt*, S.W.2d 816, 818-19 (Tex. 1936); *Rice v. Pinney*, 51 S.W.3d 705, 708 (Tex. App.— Dallas 2001, no pet.). To preserve the simplicity and speedy nature of the remedy, Texas Rule of Civil Procedure 510.3(e) provides the following regarding a forcible detainer action:

> *Only* Issue. The court must adjudicate the right to actual possession and not title. Counterclaims and the joinder of suits against third parties are not permitted in eviction cases. A claim that is not asserted because of this rule can be brought in a separate suit in a court of proper jurisdiction.
> TEX. R. CIV. P. 510.3(e).

Thus, "the sole issue in a forcible detainer action is who has the right to *immediate* possession of the premises." *Rice*, 51 S.W.2d at 708; *see also Fandy v. Lee*, 880 S.W.2d 164, 168 (Tex. App.–El Paso 1994, no writ); *Black v. Washington Mut. Bank*, 318 S.W.3d 414 (Tex. App.–Houston [1st Dist.] 2010, pet. dism'd w.o.j.). No other issues, controversies or rights of the parties related to the

property, including title[1], can be adjudicated in such a suit. *Hong Kong Dev., Inc. v. Nguyen,* 229 S.W.3d 415, 434 (Tex. App.–Houston [1st Dist.] 2007, no pet.). In simpler terms, a forcible detainer suit asks one simple and specific question: "who has right to possess the property *now*?" *Black,* 318 S.W.3d at 417.

## III. ISSUE NO. 1

**Did the Trial Court appropriately enter judgment for Appellee on its forcible detainer suit based upon the documents admitted into evidence establishing Appellee's superior right to immediate possession of the Property, such evidence being: (a) a deed of trust with tenancy at sufferance clause, (b) a substitute trustee's deed, and (c) a notice to vacate?**

---

[1] The appellate jurisdiction of a statutory county court in a forcible detainer action is confined to the jurisdictional limits of the justice court. *Crumpton v. Stevens,* 936 S.W.2d 473, 476 (Tex. App.–Fort Worth 1996, no writ). Since a justice court is expressly denied jurisdiction to determine or adjudicate title to land, accordingly and notwithstanding a county court's grant of general jurisdiction, a statutory county court has no jurisdiction to adjudicate title to real estate in a de novo trial following an appeal of a forcible detainer suit from justice court. *See Rice,* 51 S.W.3d at 708.

A forcible detainer action is not exclusive, but cumulative, of any other remedy that a party may have in the courts of this state, and the displaced party is entitled to bring a separate suit in the district court to determine the question of title. *Scott,* 90 S.W.2d at 818-19; *Rice,* 51 S.W.2d at 708; *Home Sav. Ass'n v. Ramirez,* 600 S.W.2d 911, 913 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e); *Martinez v. Beasley,* 572 S.W.2d 83, 85 (Tex. Civ. App.–Corpus Christi 1979, no writ). The Texas Legislature purposely established a system for parallel, concurrent actions in the district and justice courts to resolve issues of title and immediate possession, respectively. *Scott,* 90 S.W.2d at 818-19; *Rice,* 51 S.W.2d at 708. Thus, forcible detainer actions in justice court may be brought and prosecuted concurrently with suits to try title in district court. *Rice,* 51 S.W.2d at 708; *Haith v. Drake,* 596 S.W.2d 194, 196 (Tex. App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Hartzog v. Seeger Coal Co.,* 163 S.W. 1055, 160 (Tex. Civ. App.–Dallas 1914, no writ); *Rodriguez v. Citimortgage,* 2011 WL 182122 (Tex. App.—Austin 2011, no pet.)(memo. op.).

A. Appellant's Improper Attack on Title

To prevail in its forcible detainer action, Bank of America was not required to prove title at trial (or the validity of the foreclosure sale through which it took title to the Property) but was only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. *See Rice,* at 709; *see also Bittinger v. Wells Fargo, N.A.* 2011 WL 4793828 at \*2 (Tex. App.— Houston, 2011, no pet.)(mem. op.).

Despite the narrow scope of forcible detainer proceeding, Rust seeks to improperly attack Bank of America's title as she:

a. Alleges that the foreclosure sale was invalid through her proffered documentary evidence depicting that she and her mortgagee had an ongoing debt collection dispute over the mortgage debt even after the foreclosure sale[2]; and

b. Challenges the wording of the affidavit[3] attached to the Substitute Trustee's Deed, the affidavit containing various recitals that the

---

[2] Even if Appellant's letters with Bank of America regarding her debt dispute were admitted into evidence those letters alone would be insufficient to cause the reversal of the Trial Court's Judgment given the standard of review set out in Section I above. More than a scintilla of evidence supports the Trial Court's judgment.

[3] The affidavit admitted into evidence was attached to the substitute trustee's deed and was part of the actual Substitute Trustee's Deed recorded within the Travis County Real Property Records. A certified copy of the record was introduced at trial. [RR Vol. 3, Ex. 1], [CR 346-348]. Appellant's attack on the affidavit is nothing more than an impermissible collateral attack on the foreclosure sale, and even if the challenged portions of the affidavit were struck, the information contained therein was duplicative of the information contained within the remainder of the Substitute Trustee's Deed, Deed of Trust and Notices to Vacate. Therefore, any error created through the admission of the affidavit would have been harmless error as the testimony was duplicative of other evidence within the record. Further, Appellant has already and lost her district court lawsuit regarding the validity of the foreclosure sale. **The Fifth Circuit,** in evaluating Rust's attack on the foreclosure sale concluded, **"Rust's arguments as to why Bank**

14

foreclosure sale occurred in compliance with Texas statute and the Deed of Trust.

Numerous Texas courts, including this Court, and have consistently held that a party does not need to prove up the validity of the underlying foreclosure sale within the context of a forcible detainer proceeding. *See e.g., Reardean v. Federal Home Loan Mortg. Corp.*, 2013 WL 4487523 (Tex. App.--Austin 2013, no pet.) (mem. op.); *Shutter v. Wells Fargo Bank,* 318 S.W.3d 467, 470 (Tex. App.—Dallas 2010, pet. dism'd w.o.j.) (validity of foreclosure and sale cannot be challenged in forcible detainer proceeding); *Williams v. Bank of New York Mellon,* 315 S.W.3d 925, 926–27 (Tex. App.—Dallas 2010, no pet.) (same); *Rodriguez v. Citimortgage,* 2011 WL 182122, *3 (Tex. App.—Austin 2011, no pet.) (memo. op.)(same); *Fleming v. Fannie Mae,* 2010 WL 4812983, *5 (Tex. App.—Waco 2010, no pet.) (memo. op.) (same); *Middleton v. Crestar Mortgage Corp.*, 2000 WL 298694, *4 (Tex. App.—Austin 2000, no pet.) (mem. op.) (same); *Hornsby v. Secretary of Veterans Affairs,* 2012 WL 3525420, *3 (Tex. App.--Dallas 2012, no pet.) (mem. op.) ("Although [appellant] challenges the chain of title to the property, 'the merits of the title shall not be adjudicated' in a forcible detainer action.") (quoting Tex. R. Civ. P. 746)); *Stephens v. Federal Home Loan Mortg. Corp.,* 2011 WL 1532384, *2 (Tex. App.--Fort Worth 2011, no pet.) (mem. op.)

---

**of America's foreclosure sale was invalid lack merit…"** *See, Rust v. Bank of America, N.A., 573 Fed. Appx. 343 (5ᵗʰ Cir. 2015)* (emp. added).

(holding Federal Home not required to "connect the dots" between original lender and mortgage servicer regarding title; substitute trustee's deed evidenced Federal Home purchased property following plaintiff's default); *Deubler v. Bank of New York Mellon*, 2011 WL 1331540, *2 (Tex. App.--Fort Worth 2011, no pet.) (mem. op.); *Kaldis v. Aurora Loan Servs.*, 2010 WL 2545614, *3 (Tex. App.--Houston [1st Dist.] 2010, pet. dism'd w.o.j.) (mem. op.) (holding whether substitute trustee's deed was "void" or "deficient" or there was a "gap in the chain of title/ownership" was outside of the scope of the forcible detainer action).

## B. Bank of America Met Its Burden of Proof at Trial

A forcible detainer action is "a summary, speedy, and inexpensive" procedure for determining the right to immediate possession of real property where no claim of unlawful entry exists. *Williams v. Bank of N.Y. Mellon*, 315 S.W.3d 925, 926-27 (Tex. App.—Dallas 2010, no pet.). Exactly as is the circumstance herein, "Forcible detainer occurs when a person, who is a tenant at sufferance, refuses to surrender possession of real property after his right to possession has ceased." TEX. PROP. CODE §24.002(a)(2); *Aspenwood Apartment Corp. v. Coinmach, Inc.*, 349 S.W.3d 621, 632 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). To prevail in its forcible detainer action, Appellee was not required to prove title at trial, but was only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. *Rice* at 709.

16

The Dallas Court of Appeals in *Hornsby v. Secretary of Veterans Affairs* succinctly set out what is required of a litigant to meet its burden of proof in a forcible detainer action. 2012 WL 3525420 (Tex. App.—Dallas 2012, no pet.) (mem. op.). In *Hornsby,* the Court set out that, "To prevail on its claim [movant] was required to present more than a scintilla of evidence showing it had a right to possession of the property, [non-movant's] right of possession had ended, and [non-movant] refused to vacate." *Id.* at *5. The Court provided that a movant can meet its burden of proof by introducing the very same class of documents that were used to establish Appellee's claim herein. The documents sufficient to establish the elements of a cause of action for forcible detainer are: (1) a deed of trust that establishes a tenancy at sufferance relationship post-foreclosure [CR 336-344] [Appendix Ex. C], (2) a substitute trustee's deed [CR 346-348] [Appendix Ex. B], and (3) notices to vacate sent to the tenant at sufferance [CR 349-355] [Appendix Ex. D]. *See Hornsby* at *5; *Clarkson v. Deutsche Bank Nat'l Trust Co.,* 331 S.W.3d 837, 840 (Tex. App.—Amarillo 2011, no pet); *Shutter v. Wells Fargo Bank, N.A.,* 318 S.W.3d 467, 471 (Tex. App.—Dallas 2010, pet. dism'd w.o.j).

The appellate record in this case squarely reflects that Appellee met its burden of proof in establishing its right to immediate possession of the Property in this forcible detainer action.

17

Appellant failed to introduce any evidence of a superior right to possession of the Property, and the Trial Court did not err in finding that the Deed of Trust (with tenancy at sufferance clause), Substitute Trustee's Deed, and written notices to vacate sufficiently established Appellant's superior right to possession of the Property. *See Mitchell v. Citifinancial Mortg. Co.,* 192 S.W.3d 882, 883 (Tex. App.—Dallas 2006, no pet.); *Powelson v. U.S. Bank Nat'l Ass'n,* 125 S.W.3d 810, 812 (Tex. App.—Dallas 2004, no pet.); *Rodriguez v. Citimortgage,* 2011 WL 182122 (Tex. App.—Austin 2011, no pet.) (mem. op.) (holding substitute trustee's deed, deed of trust and notices to vacate sufficient evidence to establish superior right of possession post-foreclosure) (mem. op.); *Jaimes v. Federal Nat. Mortg. Ass'n,* 2013 WL 7809751 (Tex. App.--Austin 2013, no pet.) (mem. op.); *Bierwirth v. Fed. Nat. Mortg. Ass'n.,* 2014 WL 902541 (Tex. App.–Austin 2014, no pet.) (mem. op.). For these reasons, the Trial Court's judgment awarding possession of the Property to Appellee should be affirmed.

IV.    ISSUE NO. 2

> **Did the trial court err in awarding Appellee Attorney's Fees pursuant to Texas Property Code 24.006(b)?**

Rust asserts that Appellee is not entitled to an award of attorney's fees despite Appellee's successful prosecution of its case at trial. Attorney's fees are typically not recoverable unless the recovery is authorized by statute or a contract between the parties. *Intercontinental Grp. Partnership v. KB Home Lone Star L.P.,*

18

295 S.W.3d 650, 653 (Tex. 2009). However, statute specifically provides for the recovery of attorney's fees in eviction matters.

Bank of America provided Rust with a Notice of Vacate, and the Notice set out that Rust was to vacate the Property within three days. [CR 349-355] [Appendix, Ex. D]. Appellant cites this court to Section 24.006(a) of the Texas Property Code which provides,

> (a)     **Except as provided by Subsection(b)...** The demand must state that if the tenant does not vacate the premises before the 11th day after the date of receipt of the notice and if the landlord files suit, the landlord may recover attorneys fees....

Tex. Prop. Code §24.006(a)(emp. added). Appellant argues that since Bank of America's Notice to Vacate only provided for a three day period to vacate [C.R. 349-355], the Notice was defective under Section 24.006(a).

Of course the very first clause of Section 24.006(a) provides that the ten day period only applies to situations not covered by Subsection (b). In reading Subsection (b) it provides,

> (b)  If the landlord provides the tenant notice under Subsection (a) or if a written lease entitles the landlord to recover attorney's fees, a prevailing landlord is entitled to recover reasonable attorney's fees from the tenant.

Tex. Prop. Code §24.006(b). The Deed of Trust, paragraph 18, specifically provides for the collection of attorney's fees in the event litigation is required to remove a tenant at sufferance after foreclosure. [CR 336-344]. As such, Bank of

19

America is entitled to its award of attorney's fees provided for within the Judgment.

## PRAYER

For these reasons, Appellee Bank of America, N.A. respectfully requests that this Honorable Court affirm the judgment of the Trial Court. Appellee also requests any other relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

Hopkins Law, PLLC.
12117 Bee Caves Rd. Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinswilliams.com

By:  _/s/ Mark D. Hopkins_
Mark D. Hopkins
Texas State Bar No. 00793975
Shelley L. Hopkins
Texas State Bar No. 24036497

ATTORNEYS FOR APPELLEE
BANK OF AMERICA, N.A.

# CERTIFICATE OF SERVICE

I hereby certify that Appellee's Brief for No. 01-15-00373-CV has been forwarded to the following via certified mail, return receipt requested and via e-service on this 10th day of August 2015:

*Via E-service*
*and CMRRR #7012 1640 0001 7114 7484*
David Rogers
Law Office of David Rogers
1201 Spyglass Suite 100
Austin, Texas 78746

_/s/ Mark D. Hopkins_
Mark D. Hopkins

21

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies this brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4.

1. Exclusive of the exemption portions in Texas Rule of Appellate Procedure 9.4(i)(1), the brief contains: 4, 105 words

2. THE BRIEF HAS BEEN PREPARED in proportionally spaced typeface using Microsoft Word 2011 in Times New Roman font, with 14 pitch font for text and 12 pitch font for footnotes.

3. IF THE COURT SO REQUESTS, THE UNDERSIGNED WILL PROVIDE AN ELECTRONIC VERSION OF THE BRIEF AND/OR A COPY OF THE WORD OR LINE PRINTOUT.

4. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESEN-TATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVEN-TION OF THE TYPE-VOLUME LIMITS IN TEXAS RULE OF APPELLATE PROCEDURE 9.4, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

*/s/ Mark D. Hopkins*
Mark D. Hopkins

# APPENDIX

**Exhibit "A":**     *Rust v. Bank of America, N.A.,*
573 Fed. Appx. 343 (5th Cir. 2014)

**Exhibit "B":**     Substitute Trustee's Deed

**Exhibit "C"**     Deed of Trust

**Exhibit "D"**     Notices to Vacate

**Exhibit "E"**     Judgment Awarding Possession

Exhibit "A"
Rust v. Bank of America, N.A.
573 Fed. Appx. 343 (5th Cir. 2014)

573 Fed.Appx. 343
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.
(Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

Mary G. RUST, Plaintiff–Appellant,

v.

BANK OF AMERICA, N.A., Defendant–Appellee.

No. 13–50961 | Summary
Calendar. | June 17, 2014.

**Synopsis**
**Background:** Mortgagor brought wrongful foreclosure action against mortgage servicer. The United States District Court for the Western District of Texas granted mortgage servicer's motion for summary judgment. Mortgagor appealed.

**Holdings:** The Court of Appeals held that:

[1] affidavit of assistant vice president of mortgage servicer was based on personal knowledge;

[2] copy of assignment of deed of trust to mortgage servicer was properly authenticated;

[3] any error in district court's consideration of two copies of promissory note was not reversible error;

[4] any error in district court's failure to strike affidavit was not reversible error; and

[5] mortgage servicer had authority to foreclose on mortgagor's property.

Affirmed.

West Headnotes (5)

[1] **Mortgages**
⟜ Wrongful Foreclosure

Affidavit of assistant vice president of mortgage servicer was based on personal knowledge, and thus admissible in mortgagor's wrongful foreclosure action against mortgage servicer under Texas law; affidavit stated that it was "based upon personal knowledge of [her] review of [mortgage servicer]'s business records."

1 Cases that cite this headnote

[2] **Mortgages**
⟜ Wrongful Foreclosure

Copy of assignment of deed of trust to mortgage servicer was properly authenticated, and thus admissible in mortgagor's wrongful foreclosure action against mortgage servicer under Texas law; even if copy was not certified, affidavit of assistant vice president of mortgage servicer swore that it was true and correct copy of assignment.

1 Cases that cite this headnote

[3] **Mortgages**
⟜ Scope and mode of review

Any error in district court's consideration of two copies of promissory note was not reversible error in mortgagor's wrongful foreclosure action against mortgage servicer under Texas law; only difference in content of two copies was that one included endorsements and other did not, and central issue in action, i.e., whether mortgage servicer had authority to foreclose under deed of trust, did not depend on whether note was endorsed.

2 Cases that cite this headnote

[4] **Mortgages**
⟜ Scope and mode of review

Any error in district court's failure to strike affidavit was not reversible error in mortgagor's

wrongful foreclosure action against mortgage servicer under Texas law, where neither mortgage servicer nor court relied on affidavit for any purpose.

Cases that cite this headnote

[5] Mortgages
⊙═ Right to foreclose

Mortgages
⊙═ Under mortgage

Under Texas law, mortgage servicer had authority to foreclose on mortgagor's property, although mortgage servicer did not possess original promissory note, where beneficiary and nominee of lender, which was given power in deed of trust to foreclose and sell property, assigned its interest in deed of trust to mortgage servicer.

2 Cases that cite this headnote

**Attorneys and Law Firms**

**\*344** William Bernell Gammon, Austin, TX, for Plaintiff–Appellant.

Nathan Templeton Anderson, Attorney, Richard Dwayne Danner, Litigation Counsel, McGlinchey Stafford, P.L.L.C., Dallas, TX, Courtney Leigh Ebeier, McGlinchey Stafford, P.L.L.C., Houston, TX, for Defendant–Appellee.

Appeal from the United States District Court for the Western District of Texas, USDC No. 1:13–CV–78.

Before WIENER, OWEN, and HAYNES, Circuit Judges.

**Opinion**

PER CURIAM: *

After Bank of America, N.A. foreclosed on Mary G. Rust's home, she sued under various state laws. The district court granted summary judgment for Bank of America. We affirm.

I

Rust obtained a loan from Austin National Mortgage Limited (ANML) to acquire property in Austin, Texas. Rust signed a promissory note and also signed a deed of trust naming ANML as the lender, Ron Harpole as the trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and nominee of ANML. The deed of trust gave MERS the power to foreclose and sell the property. MERS later assigned "all beneficial interest under [the] Deed of Trust ... together with the note(s) and obligations therein described" to Bank of America. Bank of America additionally acted as the mortgage servicer.

Beginning in early 2011, Rust failed to make her mortgage payments, and Bank of America notified Rust she was in default. In July 2012, Bank of America's agent ReconTrust Company, N.A. informed Rust that the property would be sold at a foreclosure sale if the default was not cured. Rust did not cure her default and the property was foreclosed in September 2012.

Several months later, Rust sued Bank of America in Texas state court, asserting various state law claims arising out of the foreclosure of the property. Bank of America removed the case to federal court on the basis of diversity jurisdiction and moved for summary judgment, which the district court granted. Rust appealed.

II

We first consider whether the district court erred in considering certain summary judgment evidence. We review a district court's evidentiary rulings for abuse of discretion. [1] Rust objects to several documents attached to Bank of America's motion for summary judgment. She argues: (1) the affidavit of Kelly M. **\*345** Thompson, an Assistant Vice President for Bank of America, was not based on personal knowledge; (2) the copy of the assignment of the deed of trust by MERS to Bank of America was not certified and Thompson's affidavit was insufficient to certify its authenticity; (3) the two copies of the note attached to Thompson's affidavit are materially different; and (4) the affidavit of Carolyn Holleman does not rely on personal knowledge and contains legal conclusions. All of these contentions lack merit.

[1] [2] [3] [4] First, we agree with the district court that there was no reason to exclude Thompson's business records affidavit. The affidavit stated it was "based upon

personal knowledge of [her] review of Bank of America's business records"; her position at Bank of America made her competent to testify regarding the Bank's relationship with Rust; and Rust produced no reason to doubt the veracity of Thompson's testimony.[2] Additionally, even if the copy of the assignment of the deed of trust was not certified, Thompson's affidavit swore that it was a true and correct copy of the assignment, so the district court did not abuse its discretion in considering it.[3] Rust's contention that there were two different copies of the note also fails. The only difference in the content of the two notes is that one includes endorsements and the other does not. The analysis of the central question in this appeal—Bank of America's authority to foreclose under the deed of trust—does not depend on whether the note was endorsed.[4] So any error in considering both notes is not reversible error.[5] Finally, as neither Bank of America nor the district court relied on Holleman's affidavit for any purpose, declining to strike it was also not reversible error.[6] Rust's evidentiary objections are therefore meritless.

## III

We next consider whether the district court erred in granting summary judgment. "We review de novo a district court's award of summary judgment, applying the same standard as the district court."[7] Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8]

[5] As the district court explained and Rust acknowledges, her state law claims turn on whether Bank of America had the authority to foreclose on her property. If Bank of America's foreclosure was authorized, then her Texas Debt Collection Act claim, her Texas Deceptive Trade Practices Act claim, her fraudulent presentment claim, and her quiet title action fail.[9] *346 Rust's briefing focuses almost entirely on this question, so that is the issue we examine first.

This court recently considered a very similar case in which the plaintiff alleged his property had been wrongfully foreclosed. In *Martins v. BAC Home Loans Servicing, L.P.*,[10] Martins refinanced a mortgage on his home through a lender and executed a security instrument naming MERS as the beneficiary and nominee for the lender.[11] MERS then assigned the security instrument to BAC, BAC foreclosed

on the property after Martins defaulted, and Martins brought suit claiming wrongful foreclosure.[12] Affirming summary judgment in favor of BAC, the Fifth Circuit held that "MERS and BAC did not need to possess the note to foreclose," rejecting the view "that the note and deed of trust must both be held by the foreclosing entity."[13] The court relied on the Texas Property Code, which provides that a mortgage servicer may administer a foreclosure on behalf of a mortgagee if there is an agreement granting the mortgage servicer authority to service the mortgage.[14] The Code defines a mortgagee to include "the grantee, beneficiary, owner, or holder of a security instrument" and "a book entry system" like MERS, and it defines a mortgage servicer as the "last person to whom a mortgagor has been instructed" to send mortgage payments.[15] The Code also allows a mortgagee to be its own mortgage servicer.[16] The court determined that, under the Code, BAC could foreclose, presumably as MERS's mortgage servicer or as the mortgagee after the mortgage was assigned to it by MERS. Neither MERS nor BAC would have to hold or own the note for the foreclosure to be valid.[17]

Under a straightforward application of *Martins* here, Bank of America had authority to foreclose on Rust's property without holding or owning the original note between ANML and Rust, since Bank of America was in the same position as BAC. Rust nonetheless asserts several arguments as to why *Martins* does not govern here. Rust first contends that Bank of America was a mortgagee, not a mortgage servicer. However, the two roles are not mutually exclusive under the Property Code, and here, Bank of America served as both the mortgagee (after the deed of trust was assigned to it as a beneficiary) *and* its own mortgage servicer.[18] Indeed, Bank of America presented evidence that it was the mortgage servicer, and Rust does not cite any contrary evidence. Rust cannot distinguish *Martins* on this basis.

*347 Rust also cites portions of the concurring opinion in *Reinagel v. Deutsche Bank National Trust Co.*[19] The language in that one-judge opinion, concurring in the majority's judgment but disagreeing with some of its reasoning, is not binding. Also, to the extent the opinion states that a party in Bank of America's position must always hold the note to foreclose,[20] it would be inconsistent with the earlier holding in *Martins*.

Rust relies on a number of other cases that did not address the question here.[21] Rust cites this court's unpublished

decision in *Reeves v. Wells Fargo Home Mortgage*[22] for the proposition that a "party seeking to foreclose must have the right to enforce the debt it seeks to satisfy."[23] There, the court held that the plaintiff failed to show a genuine issue of material fact as to whether Wells Fargo owned the note before it began foreclosure proceedings, and that the ownership of the note was sufficient to foreclose.[24] But it did not consider the situation presented here, in which the foreclosing party argues that holding the note is not necessary to foreclose.

Rust further argues that, under *Colton v. U.S. National Bank Association*,[25] the deed of trust here grants only the original lender the power to foreclose her property. In *Colton*, as here, MERS assigned its interest as nominee in a deed of trust to a bank, and the property owner, Colton, claimed that the bank did not have authority to enforce the deed of trust because it was not the holder of the original note.[26] The court explained that "although Texas law does not require a party to be a holder of a note in order to foreclose," Colton alleged that the specific language in the deed of trust did require the bank to be the holder of the note to do so.[27] Because it was considering a Rule 12(b)(6) motion to dismiss and neither party provided the deed of trust, the court accepted as true the allegations regarding the deed of trust's terms and thus declined to dismiss the claim.[28] Here, by contrast, the deed of trust was in the summary judgment record and Rust points to no provision in it that requires Bank of America to be the holder of the note to enforce the deed of trust. Rust cannot rely on *Colton* to defeat summary judgment here.

**\*348** Finally, Rust contends that the foreclosure was invalid because Bank of America appointed a substitute trustee even though the deed of trust gave that power to the lender. While the lender did hold that power, the Texas Property Code provides that, "[n]otwithstanding any agreement to the contrary, a mortgagee may appoint or may authorize a mortgage servicer to appoint a substitute trustee."[29] Thus as mortgagee, Bank of America was within its power to appoint a substitute trustee.

Rust's arguments as to why Bank of America's foreclosure was invalid lack merit, and she raises no other grounds for reversing the district court's judgment, other than challenging the district court's alternative ground for granting summary judgment on her Texas Deceptive Trade Practices Act claim. Accordingly, we affirm the district court's grant of summary judgment.

## IV

Rust, by separate motion, asks this court to take judicial notice of new evidence in assessing her claims. As none of the evidence affects the merits of Rust's state law claims, we deny the motion.

\* \* \*

The judgment of the district court is AFFIRMED, and Rust's motion for judicial notice is DENIED.

## All Citations

573 Fed.Appx. 343

---

Footnotes

\*	Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1	*United States v. Meza*, 701 F.3d 411, 425 (5th Cir.2012).

2	*See FDIC v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1254 n. 12 (5th Cir.1992); *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir.1992).

3	*See* FED.R.EVID. 901(b)(1).

4	*See infra* notes 11–17 and accompanying text.

5	*See Meza*, 701 F.3d at 425 ("[F]or any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced [the defendant's] rights.") (alterations in original, internal quotation marks and citation omitted).

6	*See id.*

7	*Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir.2010).

8	FED.R.CIV.P. 56(a).

*See* TEX. FIN.CODE ANN. § 392.301(b)(3) (West 2013) (allowing debt collectors to exercise non-judicial contractual rights of sale); TEX. BUS. & COM.CODE ANN. § 17.50(a)(1) (West 2013) (providing a cause of action for false, misleading, or deceptive acts); TEX. CIV. PRAC. & REM.CODE ANN. § 12.002(a) (West 2013) (making a person liable for using a document with knowledge the document is a fraudulent lien or claim against real property, with intent for the document to be given the same legal effect as a court record, and intent to cause injury); *Wright v. Matthews,* 26 S.W.3d 575, 578 (Tex.App.—Beaumont 2000, pet. denied) ("The plaintiff in a suit to quiet title must allege right, title, or ownership ... with sufficient certainty to enable the court to see he ... has a right of ownership that will warrant judicial interference.").

722 F.3d 249 (5th Cir.2013).

*Martins,* 722 F.3d at 252.

*Id.*

*Id.* at 252, 254–55.

*Id.* at 255 (citing TEX. PROP.CODE ANN. § 51.0025 (West 2013)).

*Id.* (quoting TEX. PROP.CODE ANN. § 51.0001(3)–(4) (West 2013)).

*Id.* (citing TEX. PROP.CODE ANN. § 51.0001(3) (West 2013)).

*Id.*

TEX. PROP.CODE ANN. § 51.0001(3)–(4) (West 2013) (defining mortgagee to include beneficiaries of security instruments and allowing a mortgagee to be its own mortgage servicer).

735 F.3d 220 (2013).

*See Reinagel,* 735 F.3d at 229 (Graves, J., concurring).

*E.g., Nueces Cnty., Tex. v. MERSCORP Holdings, Inc.,* No. 2:12–CV–131, 2013 WL 3353948, at *4–5 (S.D.Tex. July 3, 2013) (considering whether the Texas Property Code "permits MERS to designate itself as a grantee/grantor of record ... in the real property records"); *Henning v. OneWest Bank FSB,* 405 S.W.3d 950, 958–59 (Tex.App.-Dallas 2013, no pet.) (considering wrongful foreclosure claim when bank was current holder of the note and the deed of trust, and property owner claimed there was a defect in the note's chain of title); *Robeson v. Mortg. Elec. Registration Sys., Inc.,* No. 02–10–227–CV, 2012 WL 42965, at *5–6 (Tex.App.-Ft. Worth Jan. 5, 2012, pet. denied) (considering whether there was a fact issue as to *when* the mortgagee had the authority to foreclose, given that the mortgagee was first assigned the lender's interest in both the note and the deed of trust, but later assigned MERS's interest as beneficiary in the deed of trust).

544 Fed.Appx. 564 (5th Cir.2013).

*Reeves,* 544 Fed.Appx. at 569 (internal citations and quotation marks omitted).

*Id.* at 569–70.

No. 3:12–CV–3584, 2013 WL 5903618 (N.D.Tex. Nov. 4, 2013).

*Colton,* 2013 WL 5903618, at *1, *3–4.

*Id.* at *4.

*Id.*

TEX. PROP.CODE ANN. § 51.0075(c) (West 2013).

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit "B"
## Substitute Trustee's Deed

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

12-0035714 FHA
12-0104359-01
2623 ALCOTT LANE, AUSTIN, TX 78748

## SUBSTITUTE TRUSTEE'S DEED

**Deed of Trust Date:**
July 29, 2004

**Sale of Property Date:**
September 4, 2012

**Grantor(s)/Mortgagor(s):**
MARY G. RUST, A SINGLE WOMAN

**Time of Sale:** 3:15 AM/**PM**

**Original Mortgagee:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

**Place of Sale:**
The rear "Sallyport" of the County Courthouse located on the west side of the courthouse immediately south of and slightly east of the intersection of 11th street and San Antonio Street. OR AS DESIGNATED BY THE COUNTY COMMISSIONERS.

**Current Mortgagee:**
BANK OF AMERICA, N.A.

**Grantee/Buyer:**
BANK OF AMERICA, N.A.

**Mortgage Servicer:**
Bank of America, N.A.

**Recorded on:** August 18, 2004
**As Clerk's File No.:** 2004158729

**Re-Recorded**

**Grantee/Buyer's Mailing Address:**
400 NATIONAL WAY, SV-35
SIMI VALLEY, CA 93065

**Property County:**
Travis

**Amount of Sale:**
$175,162.62

**Legal Description:** LOT 2, BLOCK "G", TANGLEWOOD FOREST, SECTION EIGHT, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 83, PAGE 213A, PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than 1:00 PM as set forth in the Notice of Substitute Trustee Sale and was concluded within three (3) hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed as evidenced by the affidavit(s) attached hereto and incorporated herein for all purposes.

Substitute Trustee, subject to any matters of record, and for amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant terms of Texas Property Code § 51.002 and § 51.009.

ST_TRSTD 072412 (11/07)



WITNESS MY HAND, _Sept. 24, 2012_ _Juanita Strickland_

Juanita Strickland ~~or RECONTRUST~~
~~COMPANY, N.A.~~, Substitute Trustee
c/o RECONTRUST COMPANY, N.A.
4500 Amon Carter Blvd., TX2-979-02-10
Ft. Worth, TX 76155

STATE OF TEXAS
COUNTY OF _Bell_

Before me, _Thomas McDougal_, the undersigned Notary Public, on this day personally appeared Juanita Strickland ~~or RECONTRUST COMPANY, N.A.~~, Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as _____, to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on _Sept. 24, 2012_ _Thomas McDougal_

My Commission Expires:

_____

Notary Public for the State of Texas

_____

Printed Name of Notary Public

Prepared by:
Recontrust Company, N.A.
4500 Amon Carter Blvd.
Ft. Worth, TX 76155

After Recording return to :
ServiceLink
7301 N. State Hwy 161
Suite 305
Irving, TX 75039



THOMAS MCDOUGAL
Notary Public, State of Texas
My Commission Expires
April 28, 2015

SL TXSTD 072412 (11/07)

2623 Alcott Lane
Austin, TX 78748
12-0058714 FHA
12-0104359-01

## AFFIDAVIT

STATE OF TEXAS }
COUNTY OF TRAVIS }

BEFORE ME, the undersigned authority on this day personally appeared      Carolyn Holleman,
who after being duly sworn, deposed and stated:

1. I am an employee of RECONTRUST COMPANY, N.A., Substitute Trustee, at the time of the events hereinafter set forth and make this affidavit for the purpose of declaring the incidents of statutory and contractual compliance of the entity or entities set out below.

2. This affidavit is made with respect to the foreclosure of that certain Deed of Trust dated July 29, 2004, recorded on August 18, 2004, as Clerk's File No. 2004158729, Real Property Records, Travis County, Texas, executed by MARY G. RUST, A SINGLE WOMAN to RON BARPOLE, original Trustee(s), in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

3. Bank of America, N.A., FKA Countrywide Home Loans Servicing, LP is the Mortgage Servicer for BANK OF AMERICA, N.A., the Mortgagee of the indebtedness secured by said Deed of Trust. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a current servicing agreement with the Mortgagee.

4. To the best of my knowledge and belief, proper notice of default was served prior to acceleration of the indebtedness. All obligations and duties of the Mortgage Servicer were performed in the manner required by law and all notices were served on each debtor at the last known address of each such debtor.

5. To the best of my knowledge and belief, the mortgagors holding an interest in the above described property were not on active duty with any branch of the Armed Forces of the United States or were not protected by the Service Members Civil Relief Act on the date of the Trustee's Sale and were alive on the date of such sale.

6. At the instructions and on behalf of the Mortgage Servicer, notice of acceleration of indebtedness and Trustee's sale was served on each debtor obligated on the debt, in strict compliance with the Texas Property Code, by certified mail at least twenty-one (21) days prior to the date therein specified for sale at the last known address of each such debtor.

7. At the instructions and on behalf of the Mortgage Servicer, Notice of Substitute Trustee Sale was filed with the County Clerk in the county or counties in which the subject property is situated and copies thereof posted at said courthouse(s) as required by the law and in the manner specified by ordinance and custom.

DATED: September 4, 2012            By: _Carolyn Holleman_ 9/20/12

                                       AFFIANT    Carolyn Holleman

STATE OF TEXAS
COUNTY OF TARRANT

Sworn to and subscribed before me,  Kanetta Denise Edwards , the undersigned Notary Public, on this day personally appeared   Carolyn Holleman  , known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 20 day of September, 2012

_Kanetta Denise Edwards_

Notary Public, State of Texas
My Commission Expires: 04-19-14



KANETTA DENISE EDWARDS
Notary Public
State of Texas
My Comm. Expires 4-19-2014

Prepared by:
RECONTRUST COMPANY, N.A.
4500 Amon Carter Blvd., TX2-979-02-10
Ft. Worth, TX 76155

After Recording return to:
ServiceLink
7301 N. State Hwy 161
Suite 305
Irving, TX 75039

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
September 26 2012 09:13 AM
FEE: $ 24.00 2012161505

# Exhibit "C"
# Deed of Trust

TOWNE & COUNTRY TITLE, INC.
File # 04-12704

DT    2004158729

9 PGS

When Recorded Return to:
RBC Mortgage Company
13100 Northwest Freeway, Suite 200
Houston, TX 77040

Ham & Lowe, PC
Attorneys
3307 Northland Dr. #175
Austin, TX 78731

After Recording, Return to:
TOWNE & COUNTRY TITLE, INC.
2525 W. ANDERSON LANE, SUITE 420
AUSTIN, TX 78757

RET. TOWNE & COUNTRY

Prepared By:

RBC Mortgage Company
13100 Northwest Freeway, Suite 200
Houston, TX 77040

Loan No.: ████████

State of Texas

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

FHA Case No.

████████████

MIN 100058900100726413

## NOTICE OF CONFIDENTIALITY RIGHTS:

If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.

THIS DEED OF TRUST ("Security Instrument") is made on July 29, 2004

The Grantor is        MARY G. RUST, A Single Woman

("Borrower"). The trustee is Ron Harpole

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS. Austin National Mortgage, Ltd., a Texas Limited Partnership.

("Lender") is organized and existing under the laws of Texas                                    , and has an address of 13100 Northwest Freeway, Suite 200, Houston, TX 77040

. Borrower owes Lender the principal sum of

One Hundred Sixty-seven Thousand Three Hundred Seventy-three And 00/100

Dollars (U.S. $167,373.00              ).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides

████████████

FHA Texas Deed of Trust with MERS - 4/96

██-4N(TX) (0307).01        Amended 2/98

Page 1 of 9        Initials: ████

VMP Mortgage Solutions (800)521-7291


EXHIBIT
A-1

for monthly payments, with the full debt, if not paid earlier, due and payable on **August 1, 2034**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **TRAVIS**. County, Texas:

LOT 2, BLOCK "G", TANGLEWOOD FOREST, SECTION EIGHT, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 83, PAGE 213A, PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

Parcel ID Number: N/A
which has the address of 2623 ALCOTT LANE                                [Street]
AUSTIN                                      [City], Texas 78748      [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initial _____

~~████████████~~

-4N(TX) (0307).01                                Page 2 of 9
®

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating

Initials _____

circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment; or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

Initials [signature]

-4N(TX) (0307).01.    Page 4 of 8

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

███████████

Initials: ███

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

22. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Growing Equity Rider
- [ ] Graduated Payment Rider
- [ ] Other [specify]

24. Purchase Money; Vendor's Lien; Renewal and Extension. [Complete as appropriate]
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

Initials: _____

██████████

███-4N(TX) (9307).01    Page 7 of 9

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____

_____ (Seal)
MARY G. RUST                          -Borrower

_____

_____ (Seal)
                                      -Borrower

_____ (Seal)      _____ (Seal)
              -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
              -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
              -Borrower                              -Borrower

VMP-6N(TX) (0107).01                    Page 9 of 9

Loan No: ████████

STATE OF TEXAS
County of TRAVIS

Before me FLOYD RUSSELL HAM                                    on this day personally appeared
MARY G. RUST, A Single Woman

known to me (or proved to me on the oath of
or through TEXAS DRIVER'S LICENSE                    ) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes
and consideration therein expressed.

Given under my hand and seal of office this 30th day of July, 2004

FLOYD RUSSELL H
Notary Public, State of Texas
My Commission Exp.
SEPTEMBER 10, 2005

Notary Public

VMP-4N(TX) (0307).01                           Page 8 of 9                                    Initials

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2004 Aug 18 11:26 AM   2004158729
EVANSK   $38.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

# Exhibit "D"
## Notices to Vacate

OCCUPANT(S) AND/OR TENANT(S)  00000003366986 EVCT
PLEASE DO NOT FORWARD
2623 ALCOTT LANE UNIT A
AUSTIN, TX 78748

## NOTICE TO TENANTS REGARDING THE
## "PROTECTING TENANTS AT FORECLOSURE ACT OF 2009"


ARE YOU A TENANT OF THE ABOVE REFERENCED PROPERTY? IF SO
# IMPORTANT INFORMATION IS
# CONTAINED WITHIN THE ATTACHED
# NOTICE.


# PLEASE READ CAREFULLY

ISTC


BARRETT DAFFIN FRAPPIER TURNER &
ENGEL, LLP IS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE.


EV_TenantsAct2009_Banner_Manual.rpt - (01/19/2010) / Ver. 05



EXHIBIT

A.4

**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

ATTORNEYS AND COUNSELORS AT LAW

15000 SURVEYOR BOULEVARD
SUITE 100, DEPARTMENT 400
ADDISON, TEXAS 75001
TELEPHONE: (972) 386-5040
TELECOPIER: (972) 341-0734

November 29, 2012

00000003366986

### IF YOU ARE A TENANT OF THIS PROPERTY YOU MAY HAVE CERTAIN RIGHTS AS SET OUT IN SECTION II OR SECTION III BELOW.

OCCUPANT(S) AND/OR TENANT(S)
2623 ALCOTT LANE UNIT A
AUSTIN, TX 78748

RE:      Premises located at
         **2623 ALCOTT LANE UNIT A, AUSTIN, TX 78748**
         (hereinafter referred to in this letter as "the property" or the "premises").

Please be advised this firm represents BANK OF AMERICA, N.A. who purchased the property at a foreclosure sale held on **Tuesday, September 4, 2012,** or is the successor in interest to the party who purchased the property.

### PROTECTING TENANTS AT FORECLOSURE ACT OF 2009

If you are a Tenant of the property, you may have certain rights under the Protecting Tenants at Foreclosure Act of 2009. Please contact us immediately to let us know if you are a Tenant and please provide us with proof of your tenancy, such as a copy of your Lease or copies of rent receipts.

#### Section I.
#### NOTICE TO VACATE TO OCCUPANT(S) WHO ARE NOT TENANTS

Unless you are a Tenant as described in Section II or Section III below, this letter constitutes formal and final demand that you **VACATE THE PREMISES** located at **2623 ALCOTT LANE UNIT A, AUSTIN, TX 78748.** If you fail to vacate the premises three (3) days after delivery of this notice, our firm has been authorized to file a forcible detainer suit against you for possession of the property.

#### Section II.
#### NOTICE TO VACATE TO TENANT(S) WITHOUT A LEASE

If you are a Tenant without a Lease or with a Lease terminable at will under applicable Texas law, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009, you must vacate the premises within ninety (90) days from the date you receive this notice. If you fail to comply with this demand, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and court costs incurred.

#### Section III.
#### NOTICE TO VACATE TO TENANT(S) WITH A LEASE

If you are a Tenant and you are occupying the premises under a Lease that you entered into before the foreclosure, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009 ("the Act"), you are entitled to occupy the premises for ninety (90) days after you receive this letter or until the end of the remaining term of the Lease, whichever is longer. If you are a Tenant who has a Section 8 Voucher, you have additional rights to continue to occupy the property. In order to confirm your status as Tenant, you must provide this firm with a copy of your Lease Agreement or other evidence of your tenancy including evidence of your Section 8 Voucher (if that applies) within ten (10) days from the date of this notice. If we do not receive evidence of your tenancy within ten (10) days, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and costs of court incurred. Your failure to confirm your status as a Tenant within ten (10) days will not act as a waiver of your rights under the Act.

## Section IV.
## SERVICEMEMBERS CIVIL RELIEF ACT

Servicemembers who are on active duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, have been recently discharged from active duty or a person who is a dependent of such a servicemember may be entitled to certain legal protections pursuant to the Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-596). Please contact us immediately if one of the categories above applies to you. In addition, please provide us a copy of the military orders establishing that you are on active duty, your discharge papers or proof that you are a dependent of such a servicemember.

The seriousness of the actions suggested in this letter warrant your immediate attention. If you have any questions, please contact the Evictions Department at (972) 386-5040.

**PLEASE BE ADVISED THAT THIS LAW FIRM IS A DEBT COLLECTOR AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

Sincerely,

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP

Copy via regular mail

Loan #:
BDFTE#:    00000003366986

EV_NoticeToVacateManual.rpt (12/13/2011) / Ver. 33  00000003366986

MARY G RUST
2623 ALCOTT LANE UNIT A
AUSTIN, TX 78748

00000003366986 EVCT

## NOTICE TO TENANTS REGARDING THE
## "PROTECTING TENANTS AT FORECLOSURE ACT OF 2009"

ARE YOU A TENANT OF THE ABOVE REFERENCED PROPERTY? IF SO

# IMPORTANT INFORMATION IS
# CONTAINED WITHIN THE ATTACHED
# NOTICE.

## PLEASE READ CAREFULLY

ISTC

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EV_TenantsAct2009_Banner_Manual.rpt - (01/19/2010) / Ver. 05

**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

ATTORNEYS AND COUNSELORS AT LAW

15000 SURVEYOR BOULEVARD
SUITE 100, DEPARTMENT 400
ADDISON, TEXAS 75001
TELEPHONE: (972) 386-5040
TELECOPIER: (972) 341-0734

November 29, 2012

00000003366986

**IF YOU ARE A TENANT OF THIS PROPERTY YOU MAY HAVE CERTAIN RIGHTS AS SET OUT IN SECTION II OR SECTION III BELOW.**

MARY G RUST
2623 ALCOTT LANE UNIT A
AUSTIN, TX 78748

RE:     Premises located at
        2623 ALCOTT LANE UNIT A, AUSTIN, TX 78748
        (hereinafter referred to in this letter as "the property" or the "premises").

Please be advised this firm represents **BANK OF AMERICA, N.A.** who purchased the property at a foreclosure sale held on Tuesday, September 4, 2012, or is the successor in interest to the party who purchased the property.

### PROTECTING TENANTS AT FORECLOSURE ACT OF 2009

If you are a Tenant of the property, you may have certain rights under the Protecting Tenants at Foreclosure Act of 2009. Please contact us immediately to let us know if you are a Tenant and please provide us with proof of your tenancy, such as a copy of your Lease or copies of rent receipts.

### Section I.
### NOTICE TO VACATE TO OCCUPANT(S) WHO ARE NOT TENANTS

Unless you are a Tenant as described in Section II or Section III below, this letter constitutes formal and final demand that you VACATE THE PREMISES located at **2623 ALCOTT LANE UNIT A, AUSTIN, TX 78748**. If you fail to vacate the premises three (3) days after delivery of this notice, our firm has been authorized to file a forcible detainer suit against you for possession of the property.

### Section II.
### NOTICE TO VACATE TO TENANT(S) WITHOUT A LEASE

If you are a Tenant without a Lease or with a Lease terminable at will under applicable Texas law, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009, you must vacate the premises within ninety (90) days from the date you receive this notice. If you fail to comply with this demand, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and court costs incurred.

### Section III.
### NOTICE TO VACATE TO TENANT(S) WITH A LEASE

If you are a Tenant and you are occupying the premises under a Lease that you entered into before the foreclosure, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009 ("the Act"), you are entitled to occupy the premises for ninety (90) days after you receive this letter or until the end of the remaining term of the Lease, whichever is longer. If you are a Tenant who has a Section 8 Voucher, you have additional rights to continue to occupy the property. In order to confirm your status as Tenant, you must provide this firm with a copy of your Lease Agreement or other evidence of your tenancy including evidence of your Section 8 Voucher (if that applies) within ten (10) days from the date of this notice. If we do not receive evidence of your tenancy within ten (10) days, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and costs of court incurred. Your failure to confirm your status as a Tenant within ten (10) days will not act as a waiver of your rights under the Act.

# Exhibit "E"
## Judgment Awarding Posession

FILED FOR RECORD

2015 MAR 18 PM 4:00

BANK OF AMERICA, N.A., §
§
*Plaintiff,* §
§
V. §
§
MARY RUST AND ALL OTHER §
OCCUPANTS OF 2623 ALCOTT §
LANE UNIT A, AUSTIN, TEXAS §
78748 §
§
*Defendant(s).* §

IN THE COUNTY COURT

DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

AT LAW NO. 1

TRAVIS COUNTY, TEXAS

## JUDGMENT

Plaintiff, Bank of America, N.A. ("Plaintiff"), appeared through its attorney of record. Defendants, Mary Rust ("Defendant") and all other occupants of 2623 Alcott Lane, Unit A, Austin, Texas 78748, appeared through counsel. The Court, having reviewed the pleadings and considered the testimony, exhibits and all other relevant evidence, is of the opinion that Plaintiff is entitled to the relief sought.

**IT IS ORDERED** that Plaintiff is entitled to possession of the premises described in Plaintiff's Original Petition for Forcible Detainer, and have restitution, for which let writ issue, of the premises commonly known as 2623 Alcott Lane, Unit A, Austin, Texas 78748, and legally described, as:

> LOT 2, BLOCK G, TANGELWOOD FOREST, SECTION EIGHT, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 83, PAGE 213A, PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

**IT IS FURTHER ORDERED** that Plaintiff have and recover from Defendants reasonable attorney's fees at the trial court level in the amount of $1,000.00, which may be collected from the bond posted by defendant, if any, payable immediately by the Clerk of the



000956975

376

Court upon presentation of this order, together with reasonable attorney's fees if the case is unsuccessfully appealed to the Courts of Appeal in the amount of $2,000.00, reasonable attorney's fees if the case is unsuccessfully appealed on writ of error to the Supreme Court of Texas in the amount of $3,500.00, and if writ is granted by the Supreme Court but the appeal is unsuccessful, reasonable attorney fees in the amount of $2,500.00.

**IT IS FURTHER ORDERED** that plaintiff recover from the Defendant(s) costs of court, for which let execution issue.

**ALL RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.**

SIGNED this _18_ day of _March_, 2015.

_____
JUDGE PRESIDING
**Todd T. Wong**

377